**Jayne MILLER, Plaintiff,**

v.

**A.H. ROBINS COMPANY, INC.,
Defendant.**

**No. 82–1254–Civ–CA.**

United States District Court,
S.D. Florida.

May 13, 1983.

Philip Freidin, Miami, Fla., for plaintiff.

Henry Burnett, Miami, Fla., for defendant.

ORDER DENYING PLAINTIFF'S MOTION TO ESTOP DEFENDANT FROM LITIGATING CERTAIN ISSUES AT TRIAL

ATKINS, District Judge.

THIS CAUSE is before the Court on the motion of plaintiff, Jayne Miller, to estop

defendant, A.H. Robins Company, from litigating certain issues at trial. For the reasons set forth below the Court finds that collateral estoppel is inappropriate in this case.

In the case at bar the plaintiff alleges that she suffered pelvic inflammatory disease as a result of having used an intrauterine device known as the "Dalkon Shield" and manufactured by the defendant, A.H. Robins Company. The plaintiff maintains that the string material specified and utilized by A.H. Robins in the manufacture of the Dalkon Shield was defective and unreasonably dangerous and that Robins was negligent in the design or manufacture of the Dalkon Shield. The plaintiff further asserts that had the defendant acted with reasonable prudence, it would have concluded that the Dalkon Shield was defective and provided reasonable warnings as to the defective nature of the Dalkon Shield.

In early 1982 the case of *Margaret Sharon Worsham v. A.H. Robins Company,* was tried in the United States District Court, Southern District of Florida (No. 80–1590–Civ–WMH), before the Honorable Judge William H. Hoeveler. That case also involved a woman claiming that she had suffered pelvic inflammatory disease as a result of her use of Dalkon Shield. The plaintiff's allegations in the Worsham case were similar to those being asserted in the case at bar. After a lengthy jury trial a Final Judgment was entered upon a special interrogatory verdict in favor of the plaintiff. Plaintiff here now claims that Robins should be estopped from relitigating issues decided against it in the *Worsham* case.

In *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)

the Supreme Court approved the use of "offensive" collateral estopped—a plaintiff seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff.[1] The Court concluded that trial courts should be granted broad discretion in determining when collateral estoppel should be applied. *Id.* at 331, 99 S.Ct. at 651.[2]

■ As stated by the Court in *Parklane* the general rule is that in cases where a plaintiff could easily have joined in the earlier action or where for other reasons the application of offensive estoppel would be unfair to a defendant, the trial judge should not allow the use of offensive collateral estoppel. *Id.* Among the cases where the use of offensive collateral would be unfair to the defendant are cases where the defendant in the first action was sued for small or nominal damages, where the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant, and where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result. *Id.* at 330–31, 99 S.Ct. at 651–52.

The doctrine of collateral estoppel embodies three requirements: "(1) the issue to be concluded must be identical to that involved in the prior actions; (2) in the prior action the issue must have been 'actually litigated,' and (3) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment."

*Int'l Ass'n of Mach. & Aero. Wkrs. v. Nix,* 512 F.2d 125, 132 (5th Cir.1975) (citations omitted).

---

**1.** In *Parklane Hosiery* the Court held that defendants in a stockholder's class action alleging securities violations could be estopped from relitigating the same issues that had been found against them in a prior injunction action brought by the Securities and Exchange Commission.

**2.** The Court notes preliminarily that the Fifth Circuit Court of Appeals has clearly held that in diversity jurisdiction federal, not state, doctrine of res judicata governs the question of

whether a federal court is bound by the prior judgment of another federal court. *Aerojet-General Corp. v. Askew,* 511 F.2d 710 (5th Cir.), *reh. denied,* 514 F.2d 1072, *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). This Court is bound by decisions handed down by the Fifth Circuit prior to the close of business on September 30, 1981, until such time as they may be overruled by the Eleventh Circuit Court of Appeals. *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206 (11th Cir.1981).

■ The factual and legal issues raised and decided in the *Worsham* case are indeed similar to those in the present case. There is no dispute that the issues in the *Worsham* case were "actually litigated." Some of the findings in the *Worsham* case are, however, too ambiguous to determine if the issues are identical or if the relevant issues were essential to the *Worsham* judgment.

In responding to a special verdict form, the jury in the *Worsham* case found that the string material specified and utilized by A.H. Robins in the manufacture of the Dalkon Shield was defective and unreasonably dangerous (Special Interrogatory 1), and that this defect was a legal cause of damage to plaintiff *Worsham*. The jury also found that Robins was negligent in the design *or* manufacture of the Dalkon Shield (Special Interrogatory 3) (emphasis supplied). It is unclear whether the jury found that the design of the Dalkon Shield was defective or the manufacture was defective. It is further unclear whether the jury found all Dalkon Shields to have been defective or that just a particular "lot" or even a particular shield was defective.

Similarly, the *Worsham* jury found that between March, 1973 and a reasonable time prior to June, 1978, scientific or medical discoveries would have led a reasonably prudent pharmaceutical company to conclude that the Dalkon Shield was defective (Special Interrogatory 5). The jury further found that A.H. Robins had a duty to warn of this defect and that Robins breached this duty (Special Interrogatory 6). Plaintiff

here allegedly suffered (or at least became aware of) her injuries in August, 1977. The Court cannot ascertain whether the *Worsham* jury found that Robins' duty to warn arose before or after August, 1977. Thus the Court cannot collaterally estop Robins from presenting evidence as to the state of the art. *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 344–45 (5th Cir.1982).[3]

Even if the Court were to conclude that the judgment in *Worsham* ought to be conclusive as to certain issues, estoppel would be inappropriate because of the existence of numerous prior inconsistent verdicts. In seventeen previous Dalkon Shield cases, Robins has obtained ten favorable verdicts.[4]

The jury in *Raine v. A.H. Robins*, No. C–80–1172, specifically found that the Dalkon Shield used by plaintiff in that case was not "defective *and* unreasonably dangerous" (Special Verdict, Question No. 1). The jury also found that plaintiff had not proved by a preponderance of the evidence that Robins was negligent in designing, manufacturing, testing, inspecting, promoting or marketing the Dalkon Shield (Special Verdict, Question No. 3). Similarly, in *Maguire v. A.H. Robins*, No. 78–M–191 (D.Colo., Nov. 6, 1980), the jury, while finding Robins liable for "negligence" and "product misrepresentation," found for Robins on the claim that the product was defective. *Raine* and *Maguire* specifically contradict the findings in *Worsham*. In light of these inconsistent verdicts, and considering the fact that this type of products

3. This Court is not bound by *Hardy*, since *Hardy* was decided by the Fifth Circuit (not the Former Fifth) after October 1, 1981. See *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982). The Court nevertheless finds the reasoning in *Hardy* persuasive.

4. *Raine v. A.H. Robins Co.*, No. C–80–1172 (Utah Dist.Ct. Salt Lake County, Dec. 15, 1982) (jury verdict for Robins); *Hamilton v. A.H. Robins Co.*, No. C143669 (Col.Sup.Ct., Los Angeles County, May 26, 1981) (jury verdict for Robins), appeal pending. *Compere v. A.H. Robins Co.* No. 3–77–287 (E.D.Tenn., Jan. 17, 1980) (directed verdict for Robins), aff'd, 661 F.2d 932 (6th Cir.1981); *Borelli v. A.H. Robins Co.*, No. 212177 (N.Y.Sup.Ct., Nassau County, May 29, 1980) (decision for Robins after nonju-

ry trial), aff'd, 81 App.Div.2d 650, 440 N.Y.S.2d 566 (1981); *Canty v. A.H. Robins Co.*, No. 822633 (Wash.Sup.Ct., King County, Oct. 5, 1978) (jury verdict for Robins); *Askeland v. A.H. Robins Co.*, No. 330633 (Cal.Sup.Ct., Santa Clara County, Feb. 7, 1978); *Pruitt v. A.H. Robins Co.*, No. 340516 (Col.Sup.Ct., Santa Clara County, April 18, 1977) (jury verdict for Robins); *Cabe v. A.H. Robins Co.*, No. C34064 (Cal.Sup.Ct., Los Angeles County, July 21, 1976) (jury verdict for Robins); *Terhune v. A.H. Robins Co.*, No. 789334 (Wash.Sup.Ct., King County, April 28, 1976) (jury verdict for Robins), aff'd, 90 Wash.2d 9, 577 P.2d 975 (1978); *Moore v. A.H. Robins Co.*, No. C63107 (Cal.Sup.Ct., Los Angeles County, March 12, 1976) (jury verdict for Robins).

liability case, like the asbestos cases, provides fertile ground for mass litigation, it would be patently unfair to Robins to estop it from relitigating the issues presented in *Worsham.* *Hardy v. Johns-Manville,* 681 F.2d at 344–45. *Parklane Hosiery Co. v. Shore,* 439 U.S. at 330, 99 S.Ct. at 651.

Accordingly, it is

ORDERED and ADJUDGED that plaintiff's motion to estop the defendant from litigating certain issues at trial is DENIED.