Frank SANDERS, Petitioner,

v.

ALABAMA DRY DOCK AND SHIP-
BUILDING COMPANY, and Director
OWCP, U.S. Department of Labor, Re-
spondents.

No. 87–7362.

United States Court of Appeals,
Eleventh Circuit.

April 5, 1988.

John R. Lockett, Peters & Lockett, P.C.,
Mobile, Ala., for petitioner.

Samuel J. Oshinsky, U.D.O.L., Office of
the Solicitor, Washington, D.C., W. Boyd
Reeves, Armbrecht, Jackson, DeMouy,
Crowe, Holmes & Reeves, Mobile, Ala., for
respondents.

Before ANDERSON, EDMONDSON and GOODWIN,* Circuit Judges.

EDMONDSON, Circuit Judge:

This case involves a petition for review of a decision of the Benefits Review Board (the "Board") reversing a finding by an Administrative Law Judge (ALJ) that the claimant was covered by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. sec. 901, *et seq.* ("LHWCA" or the "Act").[1] Also, the claimant requests this court to reverse the ALJ's ruling that claimant's injuries were not work-related. For the following reasons, we believe that the claimant is covered by the LHWCA. Accordingly, we reverse the decision of the Benefits Review Board and remand this matter to the Board for a determination of whether the claimant suffered a compensable injury.

Claimant, Frank Sanders, was employed by Alabama Dry Dock & Shipbuilding Co. ("ADDSCO") from 1973 until he was discharged in 1982. ADDSCO is engaged in the business of shipbuilding, ship repair and shipbreaking. Initially, Sanders worked as a "safety man" for approximately one year before becoming an "Assistant to the Director of Industrial Relations." As a safety man, Sanders was required, among other things, to board vessels under construction or repair, to inspect the progress of the work and to help maintain safe working conditions in the shipyard. Sanders' responsibilities as a Labor Relations Assistant were described as follows: "The Labor Relations Assistant shall report directly to the Director of Industrial Relations and shall be responsible for interpreting and advising foremen of the union contract agreements. Also, investigate, mediate and process grievances of union personnel." ADDSCO's Brief at 4. In addition, although conflicting testimony was offered as to the amount of time Sanders spent aboard vessels, the ALJ found that he was "expected to get around the [ship]yard facilities and out of the office

every day to show [his] presence to the workers." ALJ Decision and Order at 3. These tasks, the ALJ found, were "directed toward keeping the yard running, and uninterrupted by labor disputes or misconduct of the workers." *Id.*

In 1975, Sanders began experiencing severe headaches, dizziness, and memory lapses which he claims were related to job stress. Evidence suggested, however, that Sanders' problems may have resulted from substance abuse and dietary indiscretions, such as, his consumption of as many as twenty-four cola drinks a day. Sanders went on medical leave during the latter half of 1981, after which he worked intermittently until being terminated in May 1982 for being physically incapable of performing his job.

When Sanders applied for disability and medical benefits under the Act, ADDSCO contested his eligibility; ADDSCO asserted that: 1) Sanders was not a covered employee under the Act; and 2) Sanders' disability was not due to an injury arising out of his employment. An ALJ determined that Sanders' job brought him within the Act's coverage but that his injury was not work-related. Sanders appealed to the Benefits Review Board on the issue of causation, and ADDSCO cross-appealed the ALJ's finding that Sanders was a covered employee. The Board, with one member dissenting, overturned the ALJ's decision. The Board concluded that Sanders was not a covered employee. Because of this conclusion, the Board, however, never reached the issue of whether Sanders' injury was otherwise compensable under the Act. *See Sanders v. Alabama Dry Dock and Shipbuilding Co.*, 20 BRBS 104 (1987). Sanders then appealed to this court, contending that he was covered by the Act and that the ALJ erred in concluding his injury was not work-related.

The original LHWCA was enacted in 1927 to provide health and medical benefits

---

* Honorable Alfred T. Goodwin, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

1. The 1984 Amendments to the Act do not apply to this case because claimant's injury occurred prior to September 28, 1984, the enactment date of the Amendments.

to longshore men and harbor workers injured during the course of their employment. Prior to 1972, coverage under the Act extended only to injuries sustained by workers on the actual "navigable waters of the United States (including any dry dock)." *See Director, OWCP v. Perini North River Assoc.*, 459 U.S. 297, 299, 103 S.Ct. 634, 637, 74 L.Ed.2d 465 (1983). Some thought this test for determining coverage resulted in unfair and inconsistent applications of the Act based upon "artificial distinctions which plagued admiralty courts for the next forty-five years." *Mississippi Coast Marine, Inc. v. Bosarge*, 637 F.2d 994, 996–97 (5th Cir.1981).[2]

To remedy this situation, Congress amended the Act in 1972 by replacing the "injury arising on the navigable water" test with a two-part test requiring: (1) that a claimant must have been working on a covered maritime *situs* within section 3(a) when injured[3]; and (2) that the claimant must have the *status* of a covered employee under section 2(3). *See generally Northeast Marine Terminal v. Caputo*, 432 U.S. 249, 264–65, 97 S.Ct. 2348, 2357–58, 53 L.Ed.2d 320 (1977). These requirements have come to be known as the situs and status test, both of which must be satisfied in order for coverage to attach. *Holcomb v. Robert W. Kirk & Assoc., Inc.*, 655 F.2d 589, 591 (5th Cir. Unit B 1981).[4]

■ The Benefits Review Board ruled that Sanders failed the status test because his "job as an industrial relations specialist did not involve him in any phase of the process of vessel construction." There-fore, the Board held, Sanders' employment bore "no relationship to maritime activities covered by the Act and cannot be held to be covered by the Act." Because the Benefits Review Board is an adjudicatory rather than a policymaking agency, this court need not defer to the Board's construction of the LHWCA in reviewing the Board's determinations for errors of law. *Potomac Elec. Power Co. v. Director, OWCP*, 449 U.S. 268, 279 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980). Accordingly, we will make an independent determination as to whether Sanders is a covered employee.

It is undisputed that the situs of Sanders' alleged injury was upon the "navigable waters of the United States." 33 U.S.C. sec. 903. Consequently, determining whether Sanders is a covered employee hinges upon whether he has satisfied the "status" test of the Act. Section 2(3) of the Act provides:

> The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under *eighteen* tons net.

33 U.S.C. sec. 902(3). Thus, in order to satisfy the status test, Sanders must be found to have been "engaged in maritime employment."

■ Initially, ADDSCO argues that Sanders is not covered by the LHWCA

---

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

**3.** Section 3(a) provides:

(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel). No compensation shall be payable in respect of the disability of death of—

(1) A master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; or

(2) An officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof.

33 U.S.C. sec. 903.

**4.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit.

because he is a member of the company's management. This argument is without merit because the Act does not distinguish between persons on this basis. Whatever relevance Sanders' position may have in other areas of the law, for example, labor relations, the fact that he may be a part of ADDSCO's management is of no moment in view of section 2(3)'s clear mandate that the LHWCA applies to any person "engaged in maritime employment."

■ ADDSCO also argues that because Sanders' job is unenumerated in the statute, he cannot be considered a covered employee. Although the position of "Labor Relations Assistant" is not specifically mentioned in the Act's definition of employees, section 2(3), nonetheless, "extends coverage to occupations beyond those specifically named by the statute." *Trotti & Thompson v. Crawford,* 631 F.2d 1214, 1220 (5th Cir.1980); *see also Holcomb,* 655 F.2d at 591.

■ Additionally, ADDSCO contends that none of the duties and skills of Sanders' job are uniquely maritime. Therefore, ADDSCO argues, Sanders cannot be considered to be engaged in maritime employment: his job is "typical of support services incidental to any business.... [and are] no more maritime in nature than those managerial personnel who negotiated contracts with union representatives or who interviewed or hired prospective employees." ADDSCO's Brief at 12. Under this approach, ADDSCO focuses exclusively upon the skills required by Sanders' job. This analysis, however, is inconsistent with other decisions by this court involving similar issues. Whether particular job skills are uniquely maritime is not dispositive in determining whether the status test is satisfied, rather the proper focus should be upon whether the purposes served in applying the job skills directly relate to furthering the shipyard concerns of a covered employer. *See Trotti & Thompson,* 631 F.2d at 1221 n. 16. ("Clearly we must look to the purpose of the work, not solely to the particular skills used.").

For example, in *Alabama Dry Dock & Shipbuilding Co. v. Kininess,* 554 F.2d 176 (5th Cir.1977), an ADDSCO employee was held to have been engaged in maritime employment even though he was injured while sandblasting a disassembled crane in ADDSCO's shipyard. The status test was satisfied because, "[m]aintenance of the crane was necessary to enable [ADDSCO] to perform its eventual function of hauling fabricated ship sections to the water's edge." *Id.* at 178. Because Kininess' job "directly involved" shipbuilding, this court concluded that he was engaged in maritime employment.

Likewise, in *Odom Constr. Co. v. United States Dept. of Labor,* 622 F.2d 110 (5th Cir.1980), a construction worker who was injured while removing concrete blocks located along the bank of a navigable canal, satisfied the status test even though he "spent the great majority of his time doing indisputable land-based jobs." *Id.* at 113. This was because, "[m]oving the blocks directly furthered maritime commerce." *Id.* In reaching this conclusion, it was noted that this work was not "peripherally related to maritime matters...." *Id.* Instead, the job had "a realistically significant relationship to traditional maritime activity involving navigation and commerce on navigable waters." *Id.* (citations omitted). Similarly, in *Holcomb,* 655 F.2d 589, a shipyard's night watchman who regularly watched vessels from shore was engaged in maritime employment when he was injured while aboard a ship: his job was "an integral part of and directly involved in an ongoing ship repair operations." *Id.* at 594 (footnotes omitted).

■ In light of our liberal precedents, Sanders' responsibilities as an Labor Relations Assistant satisfy the status test and bring him within the Act's coverage. As the ALJ concluded, "[t]he main function of the labor relations department was directed toward keeping the [ship]yard running, and uninterrupted by labor disputes, or misconduct of the workers." Sanders' responsibilities significantly related to and directly furthered ADDSCO's ongoing shipbuilding and ship repair operations. Thus, we conclude that Sanders was "engaged in maritime employment" for purposes of establishing coverage under the Act.

Although the Benefits Review Board never reached the question of whether his

injury was work-related, Sanders invites this court to reverse the ALJ's ruling on this issue. ADDSCO argues that the ALJ's decision should be affirmed or, alternatively, remanded to the Benefits Review Board. Review of compensation orders under the Act is provided by 33 U.S.C. sec. 921. The statute, however, does not address the instant situation where review of an ALJ's decision regarding the merits of a claim is sought even though the Benefits Review Board did not consider the merits because the matter was resolved on other grounds. Furthermore, the parties have not cited, nor have we found, any case indicating what action is correct. In light of the fact that our scope of review is limited to examining Benefits Review Board's decision for errors of law and to making certain that the Board has properly adhered to its substantial evidence standard of review, *see generally Fulks v. Avondale Shipyards*, 637 F.2d 1008, 1011 (5th Cir.1981), we conclude that remand is the proper course.

Accordingly, the Benefits Review Board's decision that Sanders is not a "covered employee" is REVERSED; and the matter is REMANDED to the Benefits Review Board for further proceedings, including a determination of whether Sanders suffered a compensable injury.