[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 16, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13329

_____

D.C. Docket No. 06-00445-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

RAMON MAURICE SINGLETON,

Defendant–Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(October 16, 2008)**

Before BARKETT and WILSON, Circuit Judges, and GOLDBERG,* Judge.

PER CURIAM:

---

* Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

Ramon Singleton appeals his conviction and sentence for (1) conspiracy to distribute and possess with intent to distribute a controlled substance that includes more than 50 grams of cocaine base (commonly known as "crack cocaine"), in violation of 21 U.S.C. § 846, and (2) possession with the intent to distribute a controlled substance that includes more than 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii).

Regarding his conviction, Singleton argues that the district court erred in admitting the hearsay testimony of an officer relaying an interview he had with Singleton's girlfriend, a co-defendant, and admitting evidence of Singleton's flight after he posted bond for his arrest. Singleton also argues that giving a jury instruction on flight was clearly erroneous and that the cumulative effect of the government's opening statement and closing argument prejudiced the jury sufficiently to constitute clear error. Finally, Singleton argues that even if the errors above are deemed harmless in isolation, the conviction should be reversed under the cumulative error doctrine.

Regarding his sentence, Singleton argues that the district court committed clear error with regard to its (1) determination of the amount of crack cocaine present; (2) determination of Singleton's "leadership" role in the conspiracy; and (3) decision to impose a significantly more severe sentence on Singleton than his

co-defendant.

We have reviewed the record and considered the arguments of counsel and, based on this record, we affirm Singleton's conviction but reverse and remand his sentence.

## I. Conviction

To admit the statement of a co-conspirator, the court must determine by a preponderance of the evidence that "(1) 'the declarant and the defendant were involved in an existing conspiracy,' and (2) 'the statement was made in furtherance of that conspiracy.'" United States v. Cross, 928 F.2d 1030, 1052 (11th Cir. 1991) (quoting United States v. Jones, 913 F.2d 1552, 1563 (11th Cir. 1990)). We are satisfied that this record supports the conclusion that the district court did not clearly err in determining that both requirements were met as a matter of fact and thus, did not abuse its discretion in admitting the statement at issue. With reference to the admission of evidence of flight and the jury instruction on the subject, we find that if any error occurred, it was harmless in light of the abundance of evidence presented against Singleton in the case.[1] We also find the

_____

[1] The appellant also argues that the cumulative effect of the prosecutor's statements during opening and closing prejudiced Singleton's substantive rights and warrant a new trial. However, since this issue was not raised at trial, we apply the plain error test, which requires that there must be (1) error, (2) that is plain, and (3) that affects substantial rights, in which case an appellate court may exercise its discretion to notice a forfeited error, but only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 467 (1997) (citation omitted). We do not find plain error here.

cumulative error doctrine unavailing here**.**

## II. Sentencing

We first reject the arguments that the district court clearly erred when it imposed a substantial sentencing differentiation between Singleton and his co-defendant, and a two-level role enhancement for Singleton's leadership role pursuant to the U.S. Sentencing Guidelines Manual § 3B1.1(c). However, we do find that the district court clearly erred in calculating the quantity of crack cocaine present that yielded a base offense level of 36.[2]

A district court is required to determine, based upon some evidence, the amount of crack cocaine that would be produced from the amount of powder cocaine involved, and to use that figure in calculating a defendant's sentence under the crack cocaine schedule. See United States v. Chisholm, 73 F.3d 304, 308 (11th Cir. 1996). We have stated that, "[a]lthough sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative." United States v. Zapata, 139 F.3d 1355, 1359 (11th Cir. 1998).

---

[2] "We review a district court's determination of the quantity of drugs used to establish a base offense level for sentencing purposes under the clearly erroneous standard." United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000).

Pursuant to the 2006 U.S. Sentencing Guidelines Manual, applicable here, a district court was instructed to set the base level of a defendant, who is responsible for at least 500 grams but less than 1.5 kilograms of crack cocaine, at 36. U.S. Sentencing Guidelines Manual § 2D1.1(c)(2) (2006). On the other hand, a court was instructed to set the base level of a defendant, who is responsible for at least 150 grams but less than 500 grams of crack cocaine, at 34. Id. § 2D1.1(c)(3).

Here, law enforcement officials seized 937.30 net grams (or 33.06 net ounces)[3] of powder cocaine and 86.30 net grams of crack cocaine in Singleton's motel room. To convert all of the (net) powder into the 749.84 grams of (net) crack cocaine, as the district court found that he intended to do, Singleton would have needed 33.06 ounces of baking soda–or more than four eight-ounce boxes of baking soda.[4] However, law enforcement officials only recovered one eight-ounce box of baking soda in the motel room, which was clearly not sufficient to convert all of the seized powder into crack cocaine. There was no evidence in the record to suggest that he had any other baking powder at that time, or at any other time for that matter, to use for conversion purposes. Even if the government's evidence

---

[3] See U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.10 (2006) (providing a measurement conversion table).

[4] There is a one-to-one ratio for ounces of baking soda to ounces of powder cocaine. The 749.84g calculation was reached by using an 80% conversion rate (937.30g * 80% = 749.84g). The district court adopted this rate based on testimony of a DEA agent. Singleton did not object to this rate during sentencing.

could support a finding that Singleton intended to make some crack cocaine, it is insufficient to support a finding that Singleton intended to convert <u>all</u> of the powder into crack cocaine, or to show that the court's drug quantity calculation was based on a conservative estimate. This is especially true in light of the presence of individually packaged bags of powder cocaine in the motel room, demonstrating that Singleton was also involved in the distribution of powder cocaine. The district court's finding that Singleton intended to convert all of the powder into crack cocaine cannot be factually supported. Thus, the court's determination that Singleton should be held accountable for 836.14 grams of crack cocaine was speculative and, thus, clearly erroneous.

This error is not harmless. At most, Singleton was responsible for approximately 267.74 net grams of crack cocaine.[5] Accordingly, his maximum base offense level, assuming the court intended to rely on the amount of crack cocaine for which he should be held responsible, should have been set at 34. <u>See</u> U.S. Sentencing Guidelines Manual § 2D1.1(c)(3) (2006).

**CONVICTION AFFIRMED; SENTENCE VACATED. REMANDED FOR RESENTENCING.**

---

[5] The 86.3 grams of crack cocaine found in the motel room plus 181.4 grams–the maximum amount that could be converted from powder using one eight-ounce box of baking soda.